*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEREMY LEE WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No. 345096
Saginaw Circuit Court
LC No. 17-044434-FC

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his convictions by a jury of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (penetration of a person under age 13 by an individual age 17 or older), and one count of accosting a child for immoral purposes, MCL 750.145a. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent terms of 300 to 600 months' imprisonment for his CSC-I conviction and 28 to 72 months' imprisonment for his accosting a child for immoral purposes conviction.[1] We affirm.

## I. BACKGROUND

Defendant and his wife, Connie Williams, were charged separately with CSC-I and accosting a child for immoral purposes for offenses they committed against their daughters. At trial, one of defendant's daughters testified that when she was six years old defendant called her from her upstairs bedroom and when she arrived downstairs he grabbed her and pulled her into his and Connie's downstairs bedroom, locked the door, and had anal intercourse with her. Connie separately arranged for unknown, older men to come to the house and have anal intercourse with

---

[1] This Court denied without prejudice defendant's motion to remand on the grounds similar to the main issues on which he bases his appeal. *People v Williams*, unpublished order of the Court of Appeals, entered May 7, 2019 (Docket No. 345096).

-1-

that same daughter for money. Connie's accosting a child for immoral purposes conviction arose from her having their other daughter take sexually explicit photos of Connie.

Two Michigan State Police officers interviewed defendant. During defendant's first interview in May 2017, he denied to the trooper that he had a sexual relationship with one of his daughters and accused her of lying about it. During his second interview with a sergeant in July 2017, the trooper from the first interview watched from another room via closed-circuit television. Defendant initially denied that he had anal intercourse with his daughter but later admitted having done so. The sergeant gave defendant a set of written questions based on defendant's statements during his interview. Defendant read the questions and wrote "yes" in answer to questions whether he had anal intercourse with his daughter and that he told the truth about his actions. The sergeant also drew a diagram of a penis, and defendant drew a line that indicated how far his penis penetrated his daughter's anus. Defendant also later affirmed to the trooper the admissions he made to the sergeant.

At trial, defendant denied that he had sex with his daughter or that he ever had a sexual relationship with her. Defendant testified that the admissions he made to the sergeant and the trooper were false because he "was scared" and "didn't know what to do." Defendant also stated that he made a false admission to the trooper because he feared for his daughter's life.

## II. JOINT TRIAL

Defendant first argues that the trial court erred by trying him and Connie jointly before the same jury. Defendant, however, did not object or move for separate trials. Absent such a motion in the trial court, appellate review is generally precluded. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). Because defendant failed to raise this issue before the trial court, it is unpreserved. Therefore, defendant may only obtain relief if he establishes that an (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish that his substantial rights were affected, defendant must show that the error caused him prejudice by affecting the outcome of the lower court proceedings. *Id*. Reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted; alteration in original). Joinder of these defendants' trials was proper, and even if it had been inappropriate in this case, any error did not affect defendant's substantial rights.

A defendant does not have an absolute right to a separate trial. *People v Hoffman*, 205 Mich App 1, 20; 518 NW2d 817 (1994). A strong policy exists that favors the conduct of joint trials in the interest of justice, judicial economy, and administration. *People v Etheridge*, 196 Mich App 43, 52-53; 492 NW2d 490 (1992). The "joinder of distinct criminal charges" is permissible against multiple defendants when "(1) there is a significant overlapping of issues and evidence, (2) the charges constitute a series of events, and (3) there is a substantial interconnectedness between the parties defendant, the trial proofs, and the factual and legal bases of the crimes charged." *People v Missouri*, 100 Mich App 310, 349; 299 NW2d 346 (1980). "Moreover, even the improper joining of defendants for trial under separate offenses is not per se reversible error."

*Id.* Under MCL 768.5 and MCR 6.121(D), the trial court has discretion regarding trying criminal defendants jointly. *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994).

MCR 6.121 provides, in relevant part:

(A) An information or indictment may charge two or more defendants with the same offense. It may charge two or more defendants with two or more offenses when

(1) each defendant is charged with accountability for each offense, or

(2) the offenses are related as defined in MCR 6.120(B).

When more than one offense is alleged, each offense must be stated in a separate count. Two or more informations or indictments against different defendants may be consolidated for a single trial whenever the defendants could be charged in the same information or indictment under this rule.

(B) On a defendant's motion, the court must sever offenses that are not related as defined in MCR 6.120(B).

(C) On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

(D) On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

MCR 6.120(B) provides, in relevant part:

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

In *Hana*, 447 Mich at 346-347 (quotation marks and citations omitted), our Supreme Court explained:

[S]everance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence.

\* \* \*

Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision.

As an initial matter, defendant and Connie were not charged with "accountability" for the other's offenses. MCR 6.121(A)(1). Therefore, their informations could be consolidated for a single trial if each defendant could be charged in the same information or indictment under MCR 6.121(A)(2), meaning that the offenses were "related" as defined in MCR 6.120(B)(1).

In *People v Williams*, 483 Mich 226, 234-235; 769 NW2d 605 (2009), our Supreme Court concluded that a drug transaction on November 4, 2004, and a drug transaction on February 2, 2005, were part of a " 'single scheme or plan' of drug trafficking." The Court concluded that the charges were "not 'related' simply because they were 'of the same or similar character.' " *Id.* at 235. Rather, the charges "were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution."[2] *Id.* "Common plan offenses . . . [are] dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses." *People v McCune*, 125 Mich App 100, 103; 336 NW2d 11 (1983) (quotation marks and citation omitted).

In this case, defendant and Connie were separately charged with CSC-I and accosting a child for immoral purposes. Respecting the CSC-I charges, although the allegations against defendant and Connie involved the same victim, the charges stemmed from separate and distinct events. The prosecution alleged that defendant committed CSC-I by using his penis to penetrate his victim's anus. The prosecution alleged that Connie committed CSC-I by aiding and abetting men other than defendant to penetrate the same daughter's anus.

With respect to the accosting a child for immoral purposes charges, the allegations against defendant and Connie involved different conduct and different victims. The prosecution alleged that defendant accosted one of his daughters to engage in sexual acts with him; whereas, the prosecution alleged that Connie accosted the other daughter to take sexually explicit photos of Connie.

---

[2] The *Williams* Court analyzed an earlier version of MCR 6.120 which stated "the same conduct or transaction" instead of "the same conduct."

-4-

While there were differences in the facts giving rise to the charges against defendants, Jeremy and Connie Williams, the criminal acts of the two defendants, jointly tried, were inextricably intertwined with one another. Defendant raped his daughter by penile anal penetration in the family home. Defendant accosted this same daughter for immoral sexual purposes. Defendant's wife, Connie, with whom he was jointly tried, had their other daughter take sexually explicit photos of Connie which she then transmitted. Connie also allowed other males to anally rape defendant's rape victim in the same place and manner as defendant did, and she also received money for this. These horrific acts of depravity were connected together in place, manner and their vile nature. They were properly tried together.[3]

The record reflects that the prosecution presented sufficient evidence from which reasonable jurors could convict defendant of CSC-I and accosting a child for immoral purposes. A defendant is guilty of CSC-I under MCL 750.520b(1)(a) if "(1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Under MCL 750.520a, "sexual penetration" includes "anal intercourse[.]" Defendant's victim's testimony and defendant's admissions established that he committed the charged offense against his victim when she was under 13 years old.

Similarly, the prosecution presented sufficient evidence to convict defendant of accosting a child for immoral purposes. MCL 750.145a provides that "[a] person who accosts, entices, or solicits a child less than 16 years of age . . . with the intent to induce or force that child . . . to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, . . . is guilty of a felony . . . ." In this case, the prosecution presented evidence that established that defendant called his victim down from her room, pulled her into his bedroom, and had anal intercourse with her. The evidence established that defendant accosted his victim who was under 16 years of age with the intent to induce or force her to engage in sexual intercourse, a proscribed act. MCL 750.145a. Defendant is not entitled to relief.

### III. CLOSURE OF THE COURTROOM AND SUPPORT PERSON

Defendant argues that the trial court erred by closing the courtroom and by allowing a support person to be in the courtroom during defendant's victim's testimony. When the prosecution requested the closing of the courtroom and asked if defendant had any objection, defense counsel responded, "No." When the prosecution requested the allowance of a support person during defendant's victim's testimony, defendant did not object or raise any issue before the trial court. Defendant, therefore, failed to preserve these issues for appellate review. Accordingly, we review these claims of error under the unpreserved, forfeited constitutional plain error standard. *People v Vaughn*, 491 Mich 642, 664; 821 NW2d 288 (2012). Defendant must establish that an (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain

---

[3] Even if there was merit to defendant's arguments against the joint nature of his trial, he would be entitled to no relief because he has failed to establish that the plain error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity or public reputation of the proceedings independent of his innocence. *Carines*, 460 Mich at 763.

error affected the defendant's substantial rights. *Carines*, 460 Mich at 763. To establish that his substantial rights were affected, defendant must show that the error caused him prejudice by affecting the outcome of the lower court proceedings. *Id*. Reversal is only warranted if the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings independent of his innocence. *Id.*

Defendant argues that the trial court violated his Sixth Amendment rights under the United States Constitution by closing the courtroom during his victim's testimony. A criminal defendant has both a state and federal constitutional right to a public trial. US Const Am VI; Const 1963, art 1, § 20. Although "a trial court is entitled to control the proceedings in its courtroom, it is not entitled to do so at the expense of a defendant's constitutional rights." *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016). A defendant's right to a public trial under the Sixth Amendment is "limited":

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. [*Vaughn*, 491 Mich at 653 (quotation marks and citations omitted).]

Defendant also vaguely asserts that the trial court violated his First Amendment rights under the United States Constitution by closing the courtroom during his victim's testimony. "[A] member of the public can invoke the right to a public trial under the First Amendment." *Id*. at 652. However, "[b]ecause this case involves the accused who invoked his right to a public trial, albeit after the fact, this case proceeds solely under the Sixth Amendment." *Id.* (quotation marks and citation omitted).

At the time of trial, MCL 600.2163a provided in relevant part:

> (16) If upon the motion of a party made before trial the court finds on the record that the special arrangements specified in subsection (17) are necessary to protect the welfare of the witness, the court shall order those special arrangements. In determining whether it is necessary to protect the welfare of the witness, the court shall consider all of the following:
>
> (a) The age of the witness.
>
> (b) The nature of the offense or offenses.
>
> (c) The desire of the witness or the witness's family or guardian to have the testimony taken in a room closed to the public.
>
> (d) The physical condition of the witness.
>
> (17) If the court determines on the record that it is necessary to protect the welfare of the witness and grants the motion made under subsection (16), the court shall order 1 or more of the following:

(a) All persons not necessary to the proceeding shall be excluded during the witness's testimony from the courtroom where the trial is held. The witness's testimony shall be broadcast by closed-circuit television to the public in another location out of sight of the witness.

On the first day of trial, the prosecution made a pretrial motion to close the courtroom "when the witness is testifying." The record is unclear regarding to whom the prosecution referred. The record is also unclear whether the trial court actually closed the courtroom during victim witness testimony. Assuming that the trial court closed the courtroom during one of Connie's victim's testimony as contended on appeal by defendant, the trial court committed plain error because it never determined on the record as required under MCL 600.2163a(17) whether the circumstances required closing the courtroom under MCL 600.2163a(16) to protect the welfare of the victim.[4]

This error violated defendant's Sixth Amendment right to a public trial. See *Vaughn*, 491 Mich at 665. "[D]enial of the right to a public trial is a structural error . . . ." *Id.* at 666-667. "[S]tructural errors are intrinsically harmful, without regard to their effect on the outcome . . . ." *Vaughn*, 491 Mich at 666 (quotation marks and citation omitted; ellipsis in original). "[A] plain structural error satisfies the third *Carines* prong." *Id.* at 666. In *Vaughn*, however, our Supreme Court explained:

> Nevertheless, even if defendant can show that the error satisfied the first three *Carines* requirements, we "must exercise . . . discretion" and only grant defendant a new trial if the error "resulted in the conviction of an actually innocent defendant" or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*Id.*, quoting *Carines*, 460 Mich at 763 (ellipsis in original).]

"Because defendant has not argued that he is actually innocent, we review his claim of error only with regard to whether his conviction seriously affected the fairness, integrity, or public reputation of judicial proceedings." See *id.* at 666 n 92. The focus is whether defendant was denied the protections afforded by the Sixth Amendment. *Id.* at 667. "The goals sought by these protections include (1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *Id.*

In this case, the record does not support defendant's contention that closing the courtroom to the public during Connie's victim's testimony undermined the integrity of the proceedings or affected the fairness, or public reputation of judicial proceedings independent of his innocence. Connie's victim's testimony did not implicate defendant. In fact, she testified that defendant was never around when she took explicit photos of Connie. Defendant has failed to show that the

---

[4] The trial court also did not follow the requirements of MCR 8.116(D). The record does not reflect that the prosecution filed a *written* motion and the trial court did not state on the record specific reasons for its decision to limit access to the proceedings. See MCR 8.116(D)(1)(a) and (c).

closing of the courtroom in this case violated his right to a fair trial.[5] See *Vaughn*, 491 Mich at 667. Defendant, therefore, is not entitled to a new trial.

Similarly, defendant is not entitled to relief on the ground that the trial court permitted a support person to accompany the witness. Under MCL 600.2163a(4), a victim of criminal sexual conduct "who is called upon to testify shall be permitted to have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony." The prosecution, however, was obligated to provide notice of intent to use a support person. *Id*. In this case, the prosecution made a pretrial motion to have a support person "inside the courtroom" during the victim's testimony but the record does not reflect that the prosecution provided the requisite notice of intent. Assuming that the trial court allowed a support person's presence in the courtroom during the victim's testimony, the trial court committed plain error because no evidence establishes that the prosecution filed a notice of intent.[6]

Although the trial court plainly erred to the extent that it allowed a support person's presence during the victim's testimony, defendant has failed to establish that the result of the proceedings would have been different had the trial court not done so. *Carines*, 460 Mich at 763. The victim's testimony did not directly implicate defendant, and the prosecution presented sufficient evidence, separate from the victim's testimony, to convict defendant of CSC-I and accosting a child for immoral purposes. Defendant cannot establish his actual innocence, nor that the trial court's error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Therefore, defendant is not entitled to relief.

## IV. PIERCING THE VEIL OF JUDICIAL IMPARTIALITY

Defendant also argues that the trial court's questioning of him pierced the veil of judicial impartiality, depriving him of a fair trial. We disagree.

"The question whether a judge's conduct has denied a defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019) (quotation marks and citation omitted). However, because defendant did not object to the challenged conduct in the trial court, we review this argument for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

"A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. In *Stevens*, our Supreme Court instructed:

---

[5] Defendant does not appear to argue that closing the courtroom during Connie's victim's testimony denied him any other Sixth Amendment protections.

[6] The record also is unclear whether a support person attended the victim's testimony.

In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. Moreover, the aggrieved party need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury. The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id.* at 172 (citation omitted).]

In this case, after the prosecution finished cross-examination of defendant, the trial court asked the following questions:

*The Court*: Mr. Williams, you indicated that you admitted or confessed because you feared for your daughter's life?

*Defendant*: I did.

*The Court*: How is that the admission or confession helped with your fear for her life?

*Defendant*: Well, she was going—she was going through a lot, and I didn't—I felt like I didn't want her to go through any more.

*The Court*: But how would that help that situation?

*Defendant*: Help in what way?

*The Court*: Well, you admitted and confessed, so you tell me how it would help, in what way?

*Defendant*: Just relieve the pain that she would—I guess she would—it would relieve the pressure of trying to find out who it is.

*The Court*: Okay. Anything else, Mr. White?

*Mr. White* [defendant's counsel]: No, Your Honor. Thank you.

*The Court*: You may step down.

Under the totality of the circumstances, we cannot conclude that the trial court pierced the veil of judicial impartiality. The trial transcript does not indicate that the trial court expressed a hostile tone or demeanor, or expressed incredulity at defendant's testimony. Rather, the record

reflects that the trial court interjected questions to permit defendant to clarify his testimony. Defendant's testimony elicited during direct and cross-examination left unclear why his confession arose from fear for the victim's life. The trial court's brief questioning for clarification did not prejudice defendant's case or undermine his defense.

Further, "the presence or absence of a curative instruction is a factor in determining whether a court displayed the appearance of advocacy or partiality." *Stevens*, 498 Mich App at 177. In this case, the trial court instructed the jury as follows:

> My comments, rulings, questions, and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I'm not trying to influence your vote or express an opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

Jurors are presumed to follow their instructions. *Mahone*, 294 Mich App at 212. Defendant has not rebutted that presumption. Although "judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality," *Stevens*, 498 Mich App at 177-178, we conclude that, under the totality of the circumstances in this case, the trial court's conduct does not entitle defendant to relief.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his counsel provided ineffective assistance by (1) failing to object to the joint trial, (2) failing to object to the closure of the courtroom during the victim's testimony, and (3) failing to object to allowing a support person in the courtroom during a victim's testimony. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing.[7] *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not move for a new trial or an evidentiary hearing in the trial court, nor did he so move in this Court on the ground that his trial counsel failed to provide him effective assistance. Therefore, our "review is for mistakes that are apparent on the record alone." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Lockett*, 295 Mich App at 187. To establish that his counsel provided ineffective assistance, defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A strong presumption exists that defense counsel performed based upon a sound trial strategy. *Lockett*, 295 Mich App at 187. "A particular strategy does not

---

[7] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

In this case, defendant cannot overcome the presumption that defense counsel provided him effective assistance. Respecting his contention that his counsel failed to provide effective assistance by not objecting to the plain errors committed by the trial court, although we are not fully persuaded, we will assume that defense counsel's performance fell below an objective standard of reasonableness. Nevertheless, defendant has not established that, but for his counsel's deficient performance, there is a reasonable probability that the outcome would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The record in this case indicates that the prosecution presented sufficient evidence, including defendant's victim's testimony and witness testimony regarding his confession, that reasonable jurors could find established beyond a reasonable doubt defendant's guilt of the charged offenses. The record does not establish that a reasonable probability exists that the outcome would have been different but for defense counsel's performance. Accordingly, defendant has failed and cannot establish his claim of ineffective assistance of counsel.

## VI. OFFENSE VARIABLES

Defendant argues that he is entitled to resentencing because of purported errors in his sentencing guidelines scoring.

Because rescoring would not change defendant's minimum sentence, he is not entitled to remand. Likewise, even if we were to conclude that the trial court misscored all of the offense variables (OVs) defendant asserts were incorrect, remand is unnecessary because, as part of his concurrent sentencing, defendant must serve the statutory minimum sentence for his CSC-I conviction. MCL 750.520b(2)(b) provides that when an individual who is at least 17 years old commits CSC-I against an individual under 13 years old, he has committed a felony punishable "by imprisonment for life or any term of years, but not less than 25 years." Consequently, even if we were to remand for resentencing, there would be no practical impact on the minimum sentence that defendant must serve. Therefore, providing defendant the remedy he seeks regarding OV scoring will not change the minimum term of his imprisonment. Moreover, in a case like this involving multiple concurrent convictions, the sentencing guidelines apply only to the highest-crime-class conviction, and the trial court was only required to score the highest-class offense. *People v Mack*, 265 Mich App 122, 127-128, 130; 695 NW2d 342 (2005). Here, defendant's highest-crime-class offense was CSC-I, a Class A offense. See MCL 777.16y. Accosting a child for immoral purposes is a Class F offense. See MCL 777.16g. Accordingly, the trial court was not required to apply the guidelines to his accosting a child for immoral purposes offense. Defendant does not argue that he is entitled to resentencing on his CSC-I conviction. Therefore,

because the trial court was statutorily obligated to impose a minimum sentence of at least 25 years' imprisonment for his CSC-I conviction, defendant's scoring challenges lack merit and he is not entitled to resentencing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford